# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**TRIGINAL D. JACKSON**,

        Plaintiff,

v.                             **No. 08-CV-1108 WJ/LAM**

**TOMMY VALDEZ**, et al.,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u><br><u>ON ALL PENDING MOTIONS</u>

THIS MATTER is before the Court on (i) pro-se Plaintiff Triginal D. Jackson's *Motion tfor Court to Set Trial Date*, filed July 15, 2010 [Doc. 35]; (ii) his *Request for Ruling*, filed August 9, 2010 [Doc. 37], (iii) Defendants Brodbeck's, Vollmer's, Fox's, Valdez's, and the City of Albuquerque's untimely *Motion for Dismissal and Memorandum, in Support, Requesting Dismissal of Plaintiff's Complaint*, filed October 22, 2010 [Doc. 41], (iv) Plaintiff's *Motion for the New Mexico District as Amicus Curiae in Support of Plaintiff's Surreply and Motion for Leave to Fie [sic] Limted [sic] Surreply Motion the Plaintiff in Motion Opposition to Defendants Brodbeck, Vollmer, Fox, Valdez, and the City of[ ] Albuquerque's Motion for Dismissal and Memorandum, in Support, Requesting Dismissal of Plaintiff's Complaint*, filed November 29, 2010 [Doc. 44],[1] (v) Plaintiff's *Request for Ruling*, filed January 4, 2011 [Doc. 48]; (vi) Plaintiff's *Motion to Proceed*

---

[1]A surreply is not a permitted pleading except with prior leave of the Court. *See* D.N.M.LR-Civ. 7.6(b). Because Jackson has indicated that Defendants do not object to the filing of the surreply and Defendants have not responded or objected to it, the Court will permit it.

*with Case*, filed Feb. 22, 2011 [Doc. 53]; and Plaintiff's *Motion for Reconsideration of Setting Track*, filed Feb. 24, 2011 [Doc. 54]. The Court has reviewed the motions and briefs submitted by the parties, and the relevant authorities. The Defendants have not filed responses to Jackson's motions, thus the Court constitutes the failure to respond as "consent to grant the motion[s]." D.N.M. LR-Civ. 7.1(a). Nor have the Defendants filed their portion of the proposed Pretrial Order, which was due on December 2, 2009, as required by the Court's Scheduling Order. *See* Doc. 28 at 2. The Court will order the Defendants to file a completed proposed Pretrial Order and will require them to show cause why the Court should not strike the Defendants' jury demand as a sanction for violating the Scheduling Order. The Defendants shall also show cause why the Court should not enter a finding of liability against Defendant Vollmer on Jackson's claim for deprivation of property without due process. The Court may extend certain discovery deadlines only as set forth below. The Court further concludes that, even though it violates the Court's Scheduling Order, because the Court has an independent duty under 28 U.S.C. § 1915 to dismiss any of Jackson's claims that fail to state a cognizable claim, the Court will grant the Defendants' motion to dismiss in part and deny it in part. The motion will be granted for all of Jackson's claims **except** the § 1983 claims against Defendant Vollmer for alleged deprivation of Jackson's property in violation of his right to due process; the malicious-prosecution claim against Vollmer based on the charge of assault on a police officer; and the state-law claim for battery against Valdez. The motion to file surreply will be granted only to the extent it requests permission to file the surreply. The Court will order a settlement conference and will then set the matter for trial.

**FACTUAL BACKGROUND**

The Court accepts the following facts as true solely for the purpose of ruling on the motion

to dismiss.  On February 3, 2008, Donna Trujillo, another unidentified woman, and Ruben Mestre[2] robbed Jackson of his cell phone and twenty dollars.  *See* Doc. 2 at 2-3.  Officers arrived at the scene in response to a report of a possible fight in progress at that location.  *See* Doc. 2, Att. 5.[3]  Officers searched the two women for the money but did not find it.  Donna Trujillo signed a statement that she "was walking by, got attacked, don't know him personally," and the women were released.  *See* Doc. 2 at 3; *id.* Att. 3.  Jackson's cell phone was not returned to him.  *See* Complaint at 2.  Jackson was also released, but "Officer maintained surveillance on" him.  *Id.* at 3-4.  Officer Vollmer later approached Jackson, and after further confrontations, Vollmer arrested Jackson.  *See* Doc. 42 at 2.

On that same date, Vollmer filed with the Bernalillo County Metropolitan Court a criminal complaint asserting the following charges: "disorderly conduct, drinking in public, littering, assault on a police officer, battery."  Doc. 2, Att. 5.  The facts as stated in that criminal complaint are as follows:

> On 2/3/08 Officers were advised of a possible fight in progress at 4th and Central. Officer M. Brodbeck . . . arrived on scene prior to me arriving.  As I arrived on scene I noticed a male later identified as Triginal Jackson, was standing next to a female (Donna Trujillo), Officer Brodbeck was trying to get Mr. Jackson to sit on the curb, however the male was not listening and was yelling.  Mr. Jackson appeared to be extremely upset . . . I could immediately tell that Mr. Jackson appeared to be extremely intoxicated, and he continued to be verbally aggressive with me, stating "fuck this". [sic]  At this time I placed Mr. Jackson into handcuffs for officer safety, . . . I then asked Mr. Jackson for his name, and he stated "fuck you, I'm not telling you shit". [sic] Officer Brodbeck then talked to the female, and . . . obtained a statement from the female, and then released her.  I then released Mr. Jackson from

---

[2]No further references to Ruben Mestre are contained in the pleadings and he, Donna Trujillo and the other woman are not named defendants in this case.

[3]Jackson attached to his Complaint the first page of the criminal complaint filed by Officer Vollmer.  Because Jackson attached that page to his Complaint, the facts contained therein are accepted as true to the extent he does not rebut them elsewhere in the Complaint.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits.").

handcuffs, and he then stated that he was robbed. He continued to be very agitated, and stated that the female had taken $20.00 from him. . . . Mr. Jackson then stated that she had his cell phone, and stated that he lent it to her to make a call and never received it back. Mr. Jackson was then released from the scene . . . .

I then walked back to my patrol car located in front of the Library Bar, at that time I observed Mr. Jackson walking east on Central holding an open can of Steel Reserve, Mr. Jackson was yelling i[n] a very loud and disorderly manner "they helped her rob me, the police assisted a robbery." I then ordered Mr. Jackson to pour out the beer, and throw the can in the trash. Mr. Jackson poured out the beer, and then threw the can into the street. I then ordered Mr. Jackson to pick up the can, which he did, however he then threw the can again. I then approached Mr. Jackson and ordered him to stop at which time he threw down 3 unopened beer cans onto the . . . .

Doc. 2, Att. 5.

In the text of his Complaint, Jackson contends that in the confrontation with Vollmer, Jackson gave Vollmer an aggressive look but he did not clench his fists. *See* Doc. 2 at 4. He admits that he used profanity in the officer's presence. *See id.* at 2. Jackson contends that Vollmer did not actually see him drink. *See id.*, Att. 4 at 2. He asserts: "Littering I did what he asked. But I did not pick up the can." *Id.* Jackson also argues that he did not throw a can at Vollmer. *See* Doc. 2 at 3.

As a result of this incident, Jackson served seventy-six days in jail while awaiting trial. *See* Doc. 2 at 2.[4]

At the time of Jackson's arrest, Vollmer took from Jackson a bag and its contents. *See* Doc. 2 at 2.[5] Vollmer did not inventory the bag or report any information with regard to it. *See id.* at 3-4.

---

[4]In Jackson's response to the motion to dismiss, he states that he served seventy days in jail. *See* Doc. 42 at 1. The exact number of days which Jackson spent incarcerated is irrelevant to the decision in this matter.

[5]Jackson contends: "Just as the lady stole my $20 and cell phone this officer stole the rest of my property." Doc. 2 at 2. Jackson asserts that he was robbed and that the responding officers assisted in the completion of that robbery, *see* Doc. 42 at 4. The claims for the initial theft of the money and cell phone are not asserted in the Complaint.

The bag contained Jackson's personal papers, and pictures of Jackson's friends and family. *See id.* at 4.[6] Jackson contends that "[t]he policy of APD requires . . . an officer to document what happen[s] to property. It is clear that Vollmer did not do this instead he states he drove around with it in his car." Doc. 44 at 7. Vollmer then destroyed it all. *See* Doc. 2 at 2. Vollmer did not report Jackson's personal property as missing until Jackson asked for its return when he was released from jail. *See id.* at 3. When Jackson contacted "these people about [his] property, they had no ideal [sic] where it was nor why this officer did not place [it] in evidence." *Id.* at 4. Jackson "wrote what happen[ed] down on the complaint form," but, "[i]nternal affairs refused to address this complaint. [The Police Oversight Commission ("POC")] was only concern[ed] with property issues." *Id.* Because Jackson could not find "an official place to file [a] complaint" against Vollmer, he filed a complaint with the City of Albuquerque's Mayor's office. *Id.* The Mayor's office did not respond to the complaint. *See id.* The complaint Jackson filed with POC was denied. *See id.* at 4.

Jackson spoke with Sgt. Apodaca of the City of Albuquerque Police Department ("APD") and "requested to file charges of theft against Officer M. Vollmer." *Id.* Sgt. Apodaca refused the request because Jackson was "not an officer." *Id.* Jackson filed a complaint against Vollmer "with POC, his Sgt., LT. captain, chief, I. Mason, Internal affairs." *Id.*

Jackson told the Risk Management Department of the APD that he "would be seeking relief via court," to which the supervisor responded "we will hold you up in court for years." *Id.* On or about July 15, 2008, Jackson received a letter from "RCO" stating that an officer was found not

---

[6]The statement Jackson filed lists the bag as being a black gym bag and containing "2 hair clippers, Birth certificate, MVD Record, 5 pairs of pants, 5 T-shirt, hygiene, 1 pair of Black gym shoes, CD player, 6 CD and other items. 310 [sic] dollar money order written to MVD." Doc. 2, Att. 4 at 3.

guilty for failing to turn his property in.[7]  *See id.*, Att. 6 at 1.  But, on July 20, 2008, Defendant Tommy Valdez of the City's Risk Management Department made an agreement with Jackson to pay him four-hundred dollars for his missing property.  *See* Doc. 2 at 3 and Att. 1.[8]  Valdez then changed the agreement to condition the receipt of his payment on Jackson releasing all other claims he may have against the Defendants; Jackson disagreed with the change.  *See id.*  When Jackson would not agree to the changed terms, Valdez became angry and "[Valdez] put his hands on [Jackson]."  *Id.* Jackson filed complaints against Valdez with Valdez' supervisor, POC and "311," all of which were denied.  *See id.* at 3.

On March 14, 2008, Jackson appeared in state court on his criminal trial, represented by an appointed public defender.  *Id.*, Att. 11.  Vollmer did not appear for trial.  *See* Doc. 42 at 6.  The Metro Court dismissed the case.  *Id.*

## PROCEDURAL BACKGROUND

On November 25, 2008, Jackson filed his federal Complaint; he is proceeding *in forma pauperis*.  *See* Doc. 2; Doc. 5.  Defendants filed their Answer on January 29, 2009.  After the

---

[7]This information comes from a document attached to the Complaint.  The document was written by Jackson and marked in the left margin "Treat as Appeal."  In that document, the officer's last name was obscured in all references to him.  *See* Doc. 2, Att. 6.  "RCO" has not been defined in the Complaint.

[8]Jackson asserts that the signed agreement between Valdez and Jackson is that "by accepting the offer of $400 plaintiff does not waive any rights to any other claim.  It was stated in this fashion for property only and sign[ed] by Valdez."  Doc. 44 at 7-8.  The "agreement" upon which Jackson appears to be relying is a note at the bottom of a claim card that states "I have agreed to pay Mr. Jackson 400.00 for the settlement of his claim for property damage."  Doc. 2, Att. 1.  While the claim card contains Valdez' signed name as the adjuster, the statement is not signed by either Jackson or Valdez.  It appears that Jackson made a counteroffer to Valdez.  Jackson stated "[t]he deal with Valdez, if taken by Valdez, was that Jackson would use the $400 dollars [sic] to leave the state."  Doc. 42 at 6.

Answer was filed, Jackson filed a "Response on behalf of Plaintiff Triginal D. Jackson." Doc. 10.[9] The Court placed the case on a standard track and entered a Scheduling Order.

On July 13, 2010, the Court, *sua sponte*, issued a show-cause order noting that Jackson had apparently not complied with the Court's Scheduling Order to provide Defendants with a Pretrial Order and noting that there was lack of activity in the case. *See* Doc. 34. The Order to Show Cause required Jackson to respond to the Order "showing why his case should not be dismissed for failure to comply with Court Order and to prosecute." *Id.* at 2. In response, on July 19, 2010, Jackson filed a document entitled "Attachment," in which he contends that he had complied with the Court Order and otherwise was proceeding with his case. *See* Doc. 36. He insisted that he had, in fact, timely served his portion of the Pretrial Order on the Defendants, and he filed that document into the record. *See* Doc. 38.

No pretrial motions were filed before the August 31, 2009 Scheduling Order deadline. But after Jackson filed his portion of the Pretrial Order and requested a trial setting, and more than a year after the motions deadline had passed, the Defendants filed the motion to dismiss. In January 2011, Jackson complained that the City had not complied with discovery or filed its portion of the Pretrial Order and requested the Court to "set a new track" in the case. Doc. 47. The Defendants responded that discovery was closed under the Scheduling Order; that the Order provided that "case management deadlines [cannot] be modified, except by an order of the Court" and that, because they

---

[9]Pursuant to Rule 7 of the Federal Rules of Civil Procedure, a reply to an answer is only permitted if the court orders one to be filed. *See* FED. R. CIV. P. 7(a)(7). Pro-se pleadings are interpreted liberally, *see Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993), but the pro-se litigant must comply with the basic requirements of the Federal Rules of Civil Procedure. *See Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(citing *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994)). The Court did not require Jackson to respond to the Answer and will strike Jackson's Response.

had filed a motion to dismiss (which ignored the case-management deadlines the Defendants asked the Court to force Jackson to adhere to), "reopening the discovery might be moot."  Doc. 49 at 1-2. The Defendants did not respond to Jackson's complaint about no Pretrial Order.  Judge Martinez denied the motion because Jackson "fails to set forth any grounds for setting a new discovery track." Doc. 52 at 2.

**DISCUSSION**

## I.    THE COURT HAS SUBJECT-MATTER JURISDICTION.

The Court recognizes that Jackson and the Defendants seem confused about how this Court has jurisdiction over his case.  Jackson asserts it is diversity and also states it is a federal issue.  *See* Doc. 44 at 8.  Defendants argue that Jackson's only valid claim is a loss of property dispute for which the amount does not meet the Court's diversity jurisdictional requirements under 28 U.S.C. § 1332.  *See* Doc. 41 at 11.  Defendants also argue that Jackson's loss of property is not a constitutional tort and Jackson's claim against Valdez "does not convert the claim into a federal claim."  Doc 43 at 7.  They argue that the Court lacks subject-matter jurisdiction over this case.  *See id*.  Jurisdiction over Jackson's claims is not based on diversity, however, but rather because some of Jackson's claims are based on a federal question.[10]  Jackson titled his Complaint as one brought under § 1983.  Doc 2 at 1.  Particularly, Jackson argues that, with regard to his lost bag, Vollmer not only took and destroyed it in violation of Jackson's right to due-process, but also that Vollmer filed false assault charges against him while acting under color of state law.  *See id.* at 2.  In his subsequent response to the motion to dismiss, Jackson alleges that the City has an unconstitutional

---

[10]   At the time Jackson filed his Complaint, he stated he resided in Albuquerque, New Mexico, as do the Defendants.  *See* Doc. 2 at 2-3. Jurisdiction can not, therefore, be based on diversity.

policy that "requires that you (plaintiff) give up your constitutional right of suit on one issue for your constitutional right of suit on several issues." Doc. 42 at 6. Whether Jackson has suffered a violation of his constitutional rights under § 1983 is a federal question. Therefore, despite the low value of his deprivation-of-property claim, the Court has subject-matter jurisdiction over Jackson's case because it contains federal questions.

## II.    THE APD IS NOT A PROPER DEFENDANT.

Jackson names both the City of Albuquerque and the APD as Defendants in this matter. A municipal police department, however, is not a proper defendant and cannot be held separately liable in an action under § 1983. *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (dismissing § 1983 claims against Denver Police Department as non-suable entity), *vacated and remanded on other grounds sub nom Tyus v. Martinez*, 475 U.S. 1138 (1986). The City is, in such an instance, the proper defendant. *See Boren By and Through Boren v. City of Colo. Springs*, 624 F. Supp. 474, 479 (D. Colo. 1985). Jackson's § 1983 claims against Defendant APD, therefore, are construed as directed at the City itself. Because the City of Albuquerque is already a named Defendant in this matter, the APD will be dismissed as a Defendant.

## III.    THE MOTION TO DISMISS.

### A.    Officers Fox and Brodbeck

Defendants contend that Officer Fox must be dismissed as a Defendant because "plaintiff's complaint lacks any allegations to support a legal claim for relief against Officer Fox" and that "[i]t is not even clear from the Complaint what role he played in Plaintiff's arrest or other claims." Doc. 41 at 4-5.

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). Courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted. The pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the Rule "demands more than an unadorned, the defendant-unlawfully-harmed-me" account. *Iqbal*, 129 S. Ct. at 1949. The Court "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

Two "working principles" underlie the *Twombly* standard. *Iqbal*, 129 S. Ct. at 1949.

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id.* at 1949-50 (internal citations omitted). Accordingly, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth," and then by considering whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950-1. "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

In this case, Jackson makes no reference to Fox in his Complaint.  However, in his response, Jackson asserts

> Plaintiff [sic] complaint is clear Officer David Fox was an accomplice.  Fox wrote his own report and claimed that he went to file charges against Mr. Jackson but he seen that Vollmer had already made the arrest.  Fox states his intent was to mail Plaintiff a subpoena in the U.S. Mail to the address give[n] in his I.D.

Doc. 42 at 3.  Jackson contends that "all are guilty of Accomplice Liability" and that "Fox is an accomplice to the act of Vollmer."  Doc. 44 at 2.  He argues that "Fox along with other officers assisted the two ladies and one gentleman in the robbery of the plaintiff."  *Id.* at 3.  Jackson contends that Fox encouraged Vollmer by stating he was going to arrest Jackson and that Fox allowed the other people to leave with Jackson's property.  *See id.* at 3.  He asserts that "[c]learly Fox encourage[d] the arrest of the plaintiff and assisted in the overall robbery of the plaintiff;" and "Fox['s] statement [that] he was going to file charges against plaintiff further gave Vollmer's [sic] brownie points with the group."  *Id.* at 3-4.  Defendants reply that, even if these new allegations were true, the facts fail to state a claim against Fox because his actions do not "constitute[] a constitutional tort or any other tort."  Doc. 43 at 2.

Jackson makes multiple legal conclusions, but none that are supported by relevant facts.  Perhaps realizing the deficiencies in his Complaint with regard to the facts alleged against Fox, Jackson requests that "[i]n this matter if the court could not understand or find legal cause of action then court should allow Plaintiff to amend complaint on that issue."  Doc. 42 at 3.  Even if the Court allowed Jackson to amend his Complaint to include the allegations against Fox that he has made in documents other than his Complaint, however, there would be no valid claim against Fox.  Jackson's facts do not demonstrate that any constitutional violation or tort has occurred in which Fox actively participated or that Fox caused him any injury.

11

As Defendants point out, Jackson's Complaint also asserts no claims against Brodbeck.  *See* Doc. 41 at 5.  Jackson asserts no facts relating to Brodbeck in his Complaint (although the criminal complaint he attached to his Complaint shows that Brodbeck also investigated the altercation between Jackson and Trujillo for which Jackson was arrested) and he does not address the absence of facts against Brodbeck in his responsive pleadings.

Jackson's facts do not support any illegal action or injury by Fox or Brodbeck.  Fox and Brodbeck will be dismissed as Defendants.

**B.**     **§ 1983 Claims, Respondeat Superior, Policy and Custom**

Defendants assert that, as to claims against the City of Albuquerque, Jackson "has failed to state a claim upon which relief can be granted."  *Id.* at 5.  The Court agrees.  Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 is not an independent source of substantive rights, rather it is a mechanism for enforcing federal rights conferred elsewhere, *see Albright v. Oliver*, 510 U.S. 269, 271 (1994).  Jackson initially focused his claim on the deprivation of property.

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must,

12

instead, have a legitimate claim of entitlement to it. . . . Property interests, of course,
are not created by the Constitution.  Rather they are created and their dimensions are
defined by existing rules or understandings that stem from an independent source
such as state law-rules or understandings that secure certain benefits and that support
claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth*  408 U.S. 564, 576-77 (1972).

A civil-rights action against a supervisor or employer-entity may not be based solely on a

theory of respondeat-superior liability for the actions of employee-subordinates. *See Mitchell v.*

*Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Where the plaintiff alleges that he or she "has

suffered a deprivation of federal rights at the hands of a municipal employee[,]" and *not* that the

municipal action itself violated the law, "rigorous standards of culpability and causation must be

applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd.*

*of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 406 (1997).  Application of less

exacting standards creates the risk that "municipal liability [will] collapse[] into *respondeat superior*

liability[,]" *id.* at 415, liability which is not supported by § 1983. Because a municipality may not

be held liable for the actions of its employees on a theory of *respondeat superior*,[11]

the Court "require[s] a plaintiff seeking to impose liability on a municipality under
§ 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."
*Id.* "That is, a plaintiff must show that the municipal action was taken with the
requisite degree of culpability and must demonstrate a *direct causal link* between the
municipal action and the deprivation of federal rights." *Id*. at 404, 117 S. Ct. 1382.

*Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010)(emphasis in original).   An

unconstitutional policy or custom need not be formal or written to create municipal liability.  *See*

*id.* at 1229.  A municipality "may be held liable when the illegal practice is 'so permanent and well-

settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *Cannon v. City &*

---

[11]*See Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1189 (10th Cir. 2003).

13

*County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993)).  A municipal policy cannot be inferred from

a single incident of constitutional deprivation.

Defendants argue that Jackson failed to make any allegations of wrongdoing regarding any

of the named Defendants other than Vollmer,[12] and "failed to identify any County or City policy,

custom or practice, or any policymaker, connected to an alleged violation of his rights under the

Federal Constitution."  Doc. 41 at 5.  It is apparent in the pleadings, however, that Jackson is

asserting two § 1983 claims against the City apart from property claims associated with Vollmer.[13]

One claim, raised only in Jackson's response to the motion to dismiss, is that the City of

Albuquerque has an allegedly unconstitutional policy that requires a person to release all of his

claims against the City before he may receive compensation for property that was illegally taken.[14]

Jackson contends, without citing any authority, that the City's refusal to settle his deprivation-of-

property claim for $400 without requiring him to waive all of his other claims against the City and

_____

[12]As discussed above, Officer Brodbeck will be dismissed as a Defendant in this case because
no facts are alleged against him.

[13]Under § 1983, police officers are entitled to "qualified immunity unless they violated
clearly established constitutional rights of which reasonable officers knew or should have known
at the time of the alleged acts." *Martinez*, 771 F.2d at 444.  This doctrine protects "all but the plainly
incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
It is clearly established that police officers may only arrest a person upon probable cause.  "Even
law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present'
are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Anderson v.
Creighton*, 483 U.S. 635, 641 (1987)).  Defendants have not argued in their motion that any of the
officers are entitled to qualified immunity under § 1983 - probably because they insisted that
Jackson brought only a state-law property claim.

[14]Jackson asserts "[f]urther Plaintiff to [sic] took his issue to APD and city official it was
their abuse of the process that denied plaintiff return of his property or just compensation for his
property.  City policy as explained to Plaintiff was he must sign a waiver releasing city and all
involved from suit in order to receive compensation for his property.  That policy is
unconstitutional." Doc. 42 at 4.

its employees violates his constitutional rights.  Defendants contend that Jackson's claim that "the City's policy that he 'must sign a waiver releasing city and all involved from suit in order to receive compensation for his property'" does not constitute an unconstitutional policy or custom.  Doc. 43 at 2.  Contrary to Jackson's assertion, there is no constitutional right to pretrial settlement of claims on terms that only one of the parties agrees to, and the Court is not aware of any federal or state law that requires a public entity to settle claims on terms that the entity does not believe are beneficial to it.  *See Clayton v. Branson*, 170 N.C. App. 438, 453-54, 613 S.E.2d 259, 269-70 (N.C. App. 2005) (noting that "it is undisputed that settlement offers, if any, are in the discretion of the city.  Simple logic dictates that a party cannot have a right or entitlement to a benefit whose dispensation rests entirely in the discretion of the city . . . and thus cannot give rise to more than a 'unilateral expectation' of relief.).  Pretrial settlements are simply voluntary agreements that both parties will compromise on their positions and arrive at a mutually satisfactory contract.  *Cf. In re Dow Corning Corp.*, 244 B.R. 634, 664 (Bkrtcy. E. D. Mich.1999) ("A settlement is a private agreement voluntarily reached between parties to a dispute that legally resolves their differences."), *aff'd*, 255 B.R. 445, 524 (E. D. Mich. 2000) (noting that, "[t]o claim deprivation of due process under the Fifth Amendment, Appellants must identify a possessory interest in receiving a settlement offer from the Debtor . . . .  The [plaintiffs/appellants] may choose to either settle or litigate their claims.  The [plaintiffs/appellants] have not shown that they have a constitutional right to a settlement offer.").  Pretrial settlement agreements always require a waiver of claims in exchange for receiving money without having to litigate.  *See, e.g., United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1167 (10th Cir. 2009) (affirming district court's enforcement of the releases the plaintiff signed after a mediation resulted in a compromise settlement paying the plaintiff an undisclosed amount on the torts she alleged in the suit at bar but also requiring the plaintiff to release "any and

15

all claims [Ritchie] might have arising under federal, state or local law").

Jackson had the right, which he exercised, to refuse to accept $400 in compromise of all of his claims against the City.  But, he had no constitutionally protected property interest in a unilateral expectation that the City should settle his claims on his terms, and it does not violate public policy for the City to seek waiver of all claims against it and its employees in exchange for immediate payment of a sum that it believed was fair based on the circumstances of the case.  Accordingly, the Court will not allow Jackson to amend his complaint to include a § 1983 claim against the City based on its refusal to settle Jackson's deprivation-of-property claim related to the incident that formed the basis of his lawsuit.

Jackson's second claim is that the City failed to properly train its employees.  In support of this claim, Jackson argues "[c]ities and counties are not immune from suit in federal court under § 1983 . . . . a city and county are responsible for the actions of its officers."  Doc. 42 at 3-4.  He contends that "[c]ity is liable for failure to train, its complaint system actions, abuse of power by its employees in power, and [etc.]"  *Id.* at 4.  Arguments that a municipality has inadequately trained its employees "falls within that category of cases in which the Supreme Court has mandated that rigorous standards of culpability and causation must be applied.'"  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (*quoting Bryan County*, 520 U.S. at 406).  Proof that there exists an inadequate program also is important for purposes of demonstrating that it is a "lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident," that is the "moving force" behind the constitutional injury. *Bryan County Comm'rs v. Brown*, 520 U.S. 397, 407-08 (1997).

Jackson asserts that the City "is responsible for their [sic] training of their [sic] employees as well as the customs that the city allows to be performed by its employees."  Doc 44 at 4.  Jackson

further asserts as a federally protected right the idea that a "city has a responsibility to the citizen[s] to create a complaint system that is not an enemy to the complainant." *Id.* Jackson has not alleged, however, that the City does not have a complaint system or that the lack of a complaint system would violate a federally protected constitutional right. And in fact, Jackson attached documents demonstrating that he was able to use the complaint system. Jackson further alleges that Vollmer's and Valdez's actions were *contrary* to City policy. The facts presented by Jackson do not demonstrate, with regard to the failure-to-train claim, the existence of an inadequate program that is City policy. Jackson additionally asserts that, nevertheless, the actions that occurred demonstrate a conspiracy between city employees and shows custom. *See* Doc. 44 at 7. This argument is not presented in the Complaint but in Jackson's surreply. None of the facts presented demonstrate that the elements of a conspiracy are present. Jackson has not asserted facts that evidence any concerted agreement between City employees or demonstrate a conspiracy between any City employees to commit an illegal act. His conspiracy argument fails.

Because none of Jackson's § 1983 (or proposed) claims against the City, including his claim based on respondeat-superior liability, are cognizable, they will be dismissed and the City will be dismissed as a Defendant.

## C.    Constitutional and State-Law Torts against Vollmer and Valdez

Defendants contend that Jackson's constitutional claims against Vollmer for false arrest, malicious prosecution, false imprisonment, and related claims requires an analysis similar to that of a state tort-law claims, an essential element of each being lack of probable cause. *See* Doc. 41 at 5-6. They argue that Jackson's acts "[constitute] a series of independent arrestable offenses under New Mexico law and the [Albuquerque] City Code," including assault, battery, littering, disorderly conduct and resisting and obstructing a police officer. *Id.* at 7-8. They assert that pursuant to N.M.

17

Stat. Ann. § 3-1-6, Vollmer had the discretion to arrest Jackson without a warrant for a petty misdemeanor.  *See id.* at 8.

Jackson's constitutional claims arise under the Fourth Amendment because he never went to trial.  *See Pierce v. Gilchrist*, 359 F.3d 1279, 1287 n.5 (10th Cir. 2004) (suggesting that being held for several weeks before being "exonerated before trial" raised only Fourth-Amendment issues, not due-process issues arising under the Fourteenth Amendment); *id.* at 1286 n.3 (noting that "Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis").  "A common-law defense to a civil wrongful arrest or a false imprisonment suit . . . requires . . . that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstance."  *State v. Johnson*, 122 N.M. 696, 701-02, 930 P.2d 1148-1153-4 (1996).  Jackson acknowledges that, "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of public and private interest is not in doubt.  The arrest is constitutionally reasonable."  Doc. 42 at 5 (quoting *Virginia v. Moore*, 553 U.S. 164, 170 (2008)).  Although Jackson insists that "an Officer has to prove that he had probable cause and it is not taken to be true in a Federal Court," *id.* at 5,[15] his constitutional claims

_____

[15]Jackson asserts that the fact that he was not found guilty of the charges against him entitles him to succeed on his claims of "false imprisonment and [etc.]"  Doc. 42 at 5.  Jackson states that "The Metro Court dismissed the case, Defendant refused to appear."  *Id.* at 6.  He contends that "Officer Vollmer has a duty to prove in a court of law that [Jackson] broke these laws and that he had probably cause to arrest him for the crimes that Vollmer charged him with."  Doc. 42 at 5.  He argues that Vollmer did not reasonably believe that a crime was being committed in front of him when he arrested Jackson as demonstrated by the fact that he was not convicted of the crime charged in a court of law.  *See id.* at 4-5.  Jackson states a guilty man would have received a continuance and not a dismissal.  *See id.* at 8.  He insists he was not convicted in a court of law of the charges against him.  *See* Doc. 44 at 5.  He also infers Vollmer's failure to appear for Court indicates that his arrest was unreasonable.  *See* Doc. 42 at 4-5; 44 at 5.  Jackson's assumptions are in error.  Whether a person is convicted of a charge does not affect whether there was probable cause for the officer to

based on an alleged false arrest on all charges must fail because Jackson does not dispute Vollmer's statements, which Jackson attached to his Complaint, that Vollmer was called to the scene on reports of a fight; Vollmer obtained Trujillo's statement that Jackson had just attacked Trujillo; Vollmer observed Jackson in a state of extreme public intoxication; Vollmer observed Jackson carrying an open container of beer; and Vollmer observed Jackson throw the beer can on the ground instead of putting it in the trash.  Because Vollmer had probable cause to arrest on the crimes he observed, Jackson's arrest and imprisonment were lawful as a matter of law, even though Jackson challenges the factual basis for an additional reason for arrest, which was assault on a police officer.  *See Tanberg v. Sholtis*, 401 F.3d 1151, 1156-57 (10th Cir. 2005) (holding that, so long as an officer has probable cause to arrest on at least one valid ground, issues of disputed fact on an additional motivation to arrest "cannot affect the lawfulness of the arrest").  State-law and Fourth-Amendment claims for false arrest depend on the same probable-cause analysis.  *See id.* at 1159.  Because the false-arrest claim fails, the related false-imprisonment claim also fails.

Even though the arrest is valid as a matter of law because probable cause existed for at least one offense, it appears, however, that a police officer may still violate the constitution under § 1983 if, by submitting false statements that result in a criminal charge, he thereby "maliciously abuses a position of trust to induce the criminal justice system . . . to prosecute an innocent defendant." *Pierce*, 359 F.3d at 1293 (setting forth and analyzing the elements of a Fourth-or-Fourteenth-Amendment claim brought under § 1983 for malicious prosecution); *Wolford v. Lassater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit.").

---

act in the first place.  Jackson has not provided any legal authority to the contrary.

The Tenth Circuit has distinguished the three types of constitutional claims that may arise from a single incident:

> Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only "[a]fter the institution of legal process." *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008); *see also Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1096, 166 L.Ed. 2d 973 (2007) ("[A]fter [institution of legal process], unlawful detention forms part of the damages for the . . . tort of malicious prosecution, which remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process.").

*Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008). "The institution of legal process separates [a § 1983 claim for false imprisonment from a claim for malicious prosecution]-and thus makes them legally distinct." *Id.* at 799 n.5. The Court does not know whether probable cause for the assault charge was ever determined by a "detached judicial officer" during the time that Jackson was held - which would have "constitute[d] all of the process due in order to constitutionally detain an accused pending trial." *Taylor v. Waters,* 81 F.3d 429, 436 (4th Cir. 1996) (citing *Baker v. McCollan,* 443 U.S. 137, 142-46 (1979)). When a detainee has been arrested without a warrant, "the Fourth Amendment require[ment of] a judicial determination of probable cause [is] a prerequisite to extended restraint of liberty following arrest." *Wilkins*, 528 F.3d at 798. In making a malicious-prosecution claim, the detainee must challenge both the warrantless arrest and the resulting initiation of legal process. *See id.* (noting with approval the conclusion of the court in *Reed v. Chicago*, 77 F.3d 1049, 1053-54 (7th Cir. 1996), that an inmate "failed to state a malicious prosecution claim when he challenged only the warrantless arrest, but not the subsequent institution of legal process"). Therefore, Jackson's Fourth-Amendment § 1983 malicious-prosecution claim based on the disputed assault charge survives the motion to dismiss and may still be viable. Critically, however, if the case goes to trial, to establish liability, Jackson will have to show that no detached judicial officer ever made a probable-cause determination on the assault charge; and that

Vollmer's statements regarding the alleged assault were false ***and*** that, without those false statements, "there would have been no probable cause for his continued confinement or prosecution." *Pierce*, 359 F.3d at 1295.  Accordingly, if Jackson would have nevertheless been confined for 76 days on the misdemeanor and battery charges for which probable cause is undisputed, Jackson can not show an actionable constitutional violation. *See id.* at 1295-96 (noting that a § 1983 malicious-prosecution claim is based on a criminal defendant's liberty interest in being free from continuing confinement without due process).

The Court concludes that Jackson's Complaint and attachments fail to state cognizable claims for false arrest, false imprisonment, or malicious prosecution, except for a possible malicious-prosecution claim against Vollmer for the charge of assault on a police officer.

Defendants also argue that Jackson's "claims for false imprisonment, malicious abuse of process, intentional infliction of emotional distress, false light/defamation, invasion of privacy, legal egalitarianism, [and] enterprise/vicarious liability are all state law tort claims."  Doc. 41 at 9.  Defendants contend that Jackson failed to provide to the City timely, proper notice under the New Mexico Torts Claims Act ("NMTCA") of these claims, and, therefore, governmental immunity was not waived. *See id.* at 9-10.  Jackson responds:

> when asserting a tort claim against any local public body, a plaintiff must provide a written notice stating the time, place and circumstances of the loss or injury within 90 days after an occurrence giving rise to a claim for which the Tort Claims act waives immunity.  In fact, plaintiff did give notice why do you think Valdez hit plaintiff.  Valdez hit Plaintiff because plaintiff refused to waive his right to suit.  The signed agreement between Plaintiff and Valdez stated that Plaintiff could sue if he chose to.

Doc. 42 at 6.

In New Mexico, the right to sue and to recover against a governmental entity or its employees is limited to the rights, procedures, limitations, and conditions that the NMTCA

prescribes. *See Methola v. County of Eddy*, 95 N.M. 329, 333-34, 622 P.2d 234, 238-39 (1980).

> The Torts Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. § 41-4-17 (1978).  Immunity is waived for certain acts or omissions of law-enforcement

officers:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. § 41-4-12 (1978).  A plaintiff may not, however, sue a governmental entity without

providing the required timely notice.  Under the NMTCA:

> A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality . . . within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a *written* notice stating the time, place and circumstances of the loss or injury.

> B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, *or* unless the governmental entity had actual notice of the occurrence . . .

N.M. Stat. § 41-4-16A, B (1978) (emphasis added).  This notice requirement does not apply when

the suit is against a public employee.  *See Dutton v. McKinley County Bd. of Comm'rs.*, 113 N.M.

51, 54, 822 P.2d 1134, 1137 (Ct. App. 1991).

Jackson asserts that he advised the City of potential litigation by not fully releasing them

from all claims, an event that then resulted in Valdez allegedly hitting Jackson.  This type of event, however, does not suffice as notice for all of the torts that Jackson is asserting.[16]

Defendants assert that even if notice is presumed to have been given due to the negotiations between the Risk Management Department of the Albuquerque Police Department and Jackson, Jackson was offered four-hundred dollars as settlement for the bag and its contents, which he accepted but he then refused to sign the requested paperwork necessary to discharge the City of liability.  *See* Doc. 41 at 10-11.  The real issue presented is whether the City had actual notice of the occurrence within ninety days of the incident within the meaning of § 41-4-16(B).  *See Lopez v. State*, 122 N.M. 611, 615, 930 P.2d 146, 150 (1996).   Actual notice under § 41-4-16(B) "contemplates that the [governmental entity] must be given notice of a likelihood that litigation may ensue."  *Id.* at 615, 930 P.2d at 150 (quotation omitted), and the New Mexico courts have clearly held that the NMTCA "notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit."  *Godwin v. Memorial Medical Center*, 130 N.M. 434, 442, 25 P.3d 273, 281 (Ct. App. 2001).  "New Mexico courts consistently have applied the 'likelihood that litigation may ensue' standard, looking at whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation."  *Lopez*, 122 N.M. at 615, 930 P.2d at 150.  There is no requirement "'that the notice, whether a police report or other method, indicate a lawsuit will be filed, but rather, that the notice must inform the proper governmental entity that there exists a likelihood that litigation may ensue.'"  *Id.* (quoting *Frapper*

---

[16]Defendants also argue that loss of property is not a constitutional tort but a state tort claim for which Jackson has not given proper notice of the claim under the NMTCA.  *See* Doc. 41 at 10. Defendants have not explained how Jackson's constitutional deprivation claim was converted to a loss of property claim. This argument fails.

*v. Mergler*, 107 N.M. 61, 64-65, 752 P.2d 253, 256-57 (Ct. App. 1988)) (internal quotation marks omitted).  Receipt of a police report in some instances could provide actual notice "where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it."  *City of Las Cruces v. Garcia*, 102 N.M. 25, 27, 690 P.2d 1019, 1021 (1984) (emphasis omitted).

Jackson argues that, when he made the original agreement with Valdez, he retained his ability to sue on other matters if he chose, but then Valdez' superiors did not approve that agreement and required Valdez to retract it.  *See* Doc. 42 at 6.  While Jackson arguably informed the City that litigation may ensue with regard the taking of his personal property, the materials he submitted contain nothing that would inform the City that it might be subject to a lawsuit for all of Jackson's other asserted claims.  *See Marrujo v. N.M. State Highway Transp. Dep't*, 118 N.M. 753, 761, 887 P.2d 747, 755 (1994) (holding that accident reports "offered no suggestion that a tort had occurred or that a lawsuit was impending" and therefore did not constitute actual notice).  Therefore, his refusal to sign a release is wholly inadequate to constitute actual notice for his tort claims.  Insofar as Jackson may be attempting to bring claims for violation of the state tort-claims act, because he failed to provide actual notice of the lawsuit within the meaning of § 41-4-16(B), claims of false imprisonment, malicious abuse of process, intentional infliction of emotional distress, false light/defamation, invasion of privacy, legal egalitarianism, and enterprise/vicarious liability claims against the City made under the NMTCA must be dismissed.

Even though the notice requirement does not apply to suits against employees, the claims of false light, libel, defamation and slander claims that Jackson asserts against Vollmer fail.  The Defendants contend that these claims are state tort claims.  But the NMTCA is inapplicable to these claims because according to the Complaint, Jackson's false light, libel, defamation and slander

24

claims against Vollmer appear to be based on criminal law, specifically 18 U.S.C. § 1001, not state tort law. *See* Doc. 2 at 3. Private individuals have no standing to compel the enforcement of any federal criminal statutes unless there is a specific existence of a private right of action to enforce the statute. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Filing the claim instead under § 1983 does not change this requirement. *See Blessing*, 520 U.S. at 340 ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law."). Jackson has not shown that there was a private right of enforcement of these criminal statutes. Therefore, Jackson does not have standing to bring these claims and his claims for false light, libel, defamation and slander against Vollmer will be dismissed.

### D. Discrimination

Defendants contend that Jackson has failed to assert a valid discrimination claim because his Complaint does not alleged facts to show that any unlawful discrimination based on race or color has occurred. Doc. 43 at 6. Jackson argues that "Plaintiff's complaint shows unlawful discrimination because of race or color, therefore, and it does state a claim for violation of constitutional or federal rights. Plaintiff is robbed by Mexicans[17] and White Folks and he is the one who is arrested." Doc. 42 at 5. He further asserts "[t]hese officers discriminated against me because I was not from here," and "[n]one of these people were arrested, cited, or even properly searched because I was not from NM." Doc. 2 at 2-4. In his surreply, Jackson argues that he was robbed by two Hispanic females, that the officers laughed at him "for allowing the women to deceive him out of his money" and that it was because he was not from New Mexico and was black that "this was

---

[17]Because this is not an international event, the Court believes that Jackson is referring to New Mexicans, or citizens of the State of New Mexico, and not citizens of the Republic of Mexico.

allowed to happen." Doc. 44 at 6. He asserts that the "interstate Privileges and Immunities clause . . . guarantees equality of treatment as between in-staters and out-of-staters with respect to certain Rights." *Id.* at 7. Jackson has not alleged any facts to show that Defendants committed any illegal acts based on race, color, nationality, or even state residency. Defendants accurately contend that Jackson's claim for discrimination based on the fact he is not from New Mexico is meritless. While the actions of the officers, assuming they are true as alleged, may have been rude and unprofessional, they do not constitute discriminatory actions.[18] Jackson has not shown "unlawful discrimination because of race or color." Doc. 41 at 9. His discrimination claims will be dismissed.

### E.    Battery by Valdez

Defendants do not address in their motion to dismiss Jackson's state-law claim for battery by Valdez other than to assert that the Court should dismiss the claim because the Court does not have subject-matter jurisdiction over this case. As set forth above, Jackson has alleged cognizable claims under § 1983, thus the Court has subject-matter jurisdiction over this case and supplemental jurisdiction over the state-law battery claim.[19] *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 117 (1984). Supplemental jurisdiction[20] is the discretionary power of a federal court

---

[18]This is not the first time that Jackson has asserted this type of discrimination claim. In his other claims, similar to here, his allegations of discrimination were speculative at best. *See Jackson v. MDC, et al.*, Civ. 09-0054 WJ/RHS, Memorandum Opinion and Order filed February 16, 2010 (Doc. 56); *Jackson v. Bernalillo County, et al.*, Civ. 09-0884 WJ/RLP, Memorandum Opinion and Order Dismissing Case filed February 23, 2010 (Doc. 11).

[19]In his assertions pertaining to Valdez, Jackson contends that the immunity granted pursuant to Subsection A of N.M. Stat. § 41-4-4 (1978) does not apply to certain public employees while acting within the scope of their duties. However, none of the provisions he listed are applicable to Valdez. *See* Doc. 42 at 6-7.

[20]28 U.S.C. § 1367 codified the doctrine of pendent jurisdiction using the term supplemental jurisdiction. *See* 28 U.S.C. § 1367, commentary on 1988 revision.

to hear all claims which arise out of the same "common nucleus of operative fact" as one "case" that a plaintiff would normally be expected to try in a single proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Once "the bases for federal subject matter jurisdiction have been extinguished[,] the district court may decline to exercise continuing 'pendent or supplemental jurisdiction over [the] plaintiff's state claims." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998).  Because the alleged battery stems from the same set of events that comprises the alleged deprivation of property without due process, the Court will exercise its supplemental jurisdiction over the claims that arise under state law.  *See* 28 U.S.C. § 1367(c)(3).  The motion to dismiss the claim against Valdez will be denied.

**IV.    REQUESTS FOR RULING.**

The Court has allowed the litigation of Jackson's case to continue.  Further, as discussed above, the Court has considered and is making a determination herein with regard to Defendants' motion to dismiss and Jackson's pending motions.  Accordingly, Jackson's requests for rulings[21] are moot.

**V.    SECOND MOTION TO PROCEED AND MOTION TO RECONSIDER ORDER REFUSING TO SET NEW DEADLINES.**

In his second *Motion to Proceed*, Jackson again requests new deadlines for discovery and production of a "Vaughn Index," a term derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), which is an itemized index of documents that have been withheld as exempt under FOIA with

---

[21]As a postscript to his Request for Ruling, Jackson asks the Court to provide instructions on how to file "Leave of Court."  *See* Doc. 37 at 3.  A request for "Leave of Court" is simply a motion requesting permission from the Court to file a particular document or perform another act related to the case.  Like any motion, a request for leave must contain a factual basis and legal support for why such leave is necessary or appropriate.

an explanation of why the agency believes the documents are exempt.  As noted, *supra*, the Defendants have consented to the granting of the motion by their failure to timely respond.  But the Court is also obliged to properly apply the law, and clearly, requests for discovery are not FOIA requests, so the Defendants are under no duty to submit such an index.  Further, Jackson states that, even without more discovery, "if we proceed right now plaintiff could prove his case."  Doc. 53 at 2.  The remainder of the "motion" is simply a conglomeration of citations and principles apparently copied from treatises.  But he still asks for an extension of discovery so that "counsel can provide requested discovery made by plaintiff months ago."  *Id.* at 19.  The problem, again, is that Jackson does not state what discovery he requested that the Defendants have not provided.  But because the Defendants have consented to the motion, the Court will give Jackson a final opportunity to tell the Court specifically what discovery he needs to attempt to establish his remaining § 1983 claims against Vollmer for deprivation of property and malicious prosecution and his state-law claim for battery against Valdez.

In his request for reconsideration of Judge Martinez's February 18, 2011 Order, Jackson again complains about the absence of a Pretrial Order, which is an integral part of the existing Scheduling Order, and about the Defendants' refusal to cooperate in getting this case to trial.  The Court finds that Defendants have unreasonably refused to comply with the Scheduling Order even after having been put on notice that their submission regarding the Pretrial Order is past-due, and that they violated the Scheduling Order by filing the motion to dismiss more than a year after the filing deadlines.  Defendants shall file, within ten days of the filing of this Order, a completed proposed Pretrial Order.  And Defendants shall show cause why the Court should not strike the Defendants' jury demand and should not include, as part of the Pretrial Order adopted by the Court, a determination that Defendant Vollmer is liable for violating Jackson's constitutional rights as a

28

matter of law by failing to properly return Jackson's bag to him after Vollmer took the bag and arrested Jackson.

The Court will grant the motion for a trial setting and will set the matter for trial after a settlement conference has been held.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Dismissal* [Doc. 41] is **GRANTED** in part and **DENIED** in part.  It is **DENIED** with regard to Jackson's § 1983 claims against Vollmer as set forth above and his state-law battery claim against Valdez.  The remainder of the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for the New Mexico District as Amicus Curiae in Support of Plaintiff's Surreply and Motion for Leave to Fie [sic] Limted [sic] Surreply Motion the Plaintiff in Motion Opposition to Defendants Brodbeck, Vollmer, Fox, Valdez, and the City of Albuquerque's Motion for Dismissal and Memorandum, in Support, Requesting Dismissal of Plaintiff's Complaint* [Doc. 44] is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** only to the extent that Jackson may file the surreply.

**IT IS FURTHER ORDERED** that the Plaintiff's *Requests for Ruling* [Doc. 37; Doc. 48] are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's *Request to Set Trial Date* [Doc. 35] is **GRANTED** and that a settlement conference will be held as soon as possible, after which time the Court will set the case for trial.

**IT IS FURTHER ORDERED** that Plaintiff's second *Motion to Proceed* [Doc. 53] and *Motion to Reconsider* [Doc. 54] are **GRANTED** in part and **DENIED** in part.  They are **GRANTED** insofar as the Defendants shall file their proposed Pretrial Order and show cause why their jury demand should not be struck and why the Court should not enter a finding of liability against

Vollmer on the deprivation-of-property-claim against within ten days of the filing of this Order; and Jackson shall submit in writing a document specifying the discovery he needs on his three remaining claims within ten days of the filing of this Order.

**IT IS FURTHER ORDERED** that the *Response on behalf of Plaintiff Triginal D. Jackson* [Doc. 10] is **STRUCK** from the record.

_____
UNITED STATES DISTRICT JUDGE