# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TRIGINAL D. JACKSON,

    Plaintiff,

v.                                            No. 08-CV-1108 WJ/LAM

MATTHEW VOLLMER and
TOMMY VALDEZ,

    Defendants.

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW RESULTING FROM JUNE 6, 2011 TRIAL

THIS MATTER came before the Court on a bench trial held on June 6, 2011. The Court previously dismissed several claims brought by pro se Plaintiff Triginal D. Jackson in the March 16, 2011 Memorandum Opinion and Order (Doc. 55) and the April 1, 2011 Order to Show Cause (Doc. 59). The Court has also stricken Defendants' demand for a jury trial as a sanction for failing to comply with the Court's Scheduling Order and for failing to respond to the Order to Show Cause (Doc. 59). Further, the Court entered a finding of liability against Defendant Matthew Vollmer for depriving Jackson of his property without due process of law because Vollmer failed to respond to the Court's April 1, 2011 Order to Show Cause (Doc. 59). The only issues remaining for trial, therefore, were: (1) the claim brought under 42 U.S.C. § 1983 against Officer Matthew Vollmer for malicious prosecution in charging Plaintiff with assault on a police officer, (2) the state law claim against Defendant Tommy Valdez for battery, and (3) the amount of damages Officer Vollmer should pay for depriving Plaintiff of his property without due

1

process of law. At the conclusion of trial, the Court reserved ruling on all three claims. *See* Tr. at 135.[1] Vollmer has requested the Court to set aside its previous finding of liability regarding the due process claim. The Court finds in favor of Officer Vollmer on the malicious prosecution claim and in favor of Valdez on the battery claim. Additionally, the Court declines to set aside its finding of liability on the due process claim and values Jackson's lost duffle bag and its contents at $400.

## FINDINGS OF FACT

**I.    Malicious Prosecution Claim Against Defendant Vollmer**

1. On February 3, 2008, Albuquerque Police Department ("APD") Officer Vollmer was advised of a possible fight in progress in downtown Albuquerque, New Mexico. Tr. at 39, 55.

2. Another APD officer, Michael Brodbeck, had arrived on scene prior to Officer Vollmer and was attempting to get Jackson to sit on a curb so the officer could conduct an investigation. Tr. 115-16, 123. Jackson, according to the officer's testimony, appeared to be highly intoxicated, yelling obscenities and refusing to obey Officer Brodbeck's instructions. Tr. at 12-13, 56-57, 116, 125-26. The Court finds the officers' testimony regarding Jackson's state of intoxication to be very credible.[2]

3. Officer Vollmer performed a "pat down" search and handcuffed Jackson for officer safety purposes and to allow the investigation to continue. Tr. at 56-57, 82.

---

[1]Hereafter, "Tr." refers to Transcript of Bench Trial (Doc. 84).

[2]Jackson admitted more than once during the course of the trial that he is a very loud person by nature. This admission by Jackson was quite obvious and I am more inclined to describe Jackson's demeanor as rude and obnoxious rather than merely being loud. Considering that Jackson's conduct in a United States courtroom bordered on being outright contemptuous, one can only imagine Jackson's conduct and demeanor when he is intoxicated.

4.  A woman accused Jackson of battery. Tr. at 56-57, 116, 118. She gave a statement and was released. *Id.*

5. Officer Vollmer waited for the woman to go out of his view before taking the handcuffs off Jackson to avoid further conflict. Tr. at 58.  Jackson then claimed that the woman had taken $20 from him when he was holding the money above his head, trying to get her to have another drink with him. *Id.*  But by that time, the woman had already left and was out of sight. Tr. at 35, 58.

6.  Officer Vollmer was returning to his patrol car when he heard Jackson yelling "Police assisted robbery," causing patrons in the downtown area to stop and stare. Tr. at 34, 36, 44, 59. Upon closer inspection, Officer Vollmer saw that Jackson was holding an open container of beer as he was walking. Tr. at 59.

7.  Officer Vollmer ordered Jackson to pour out the beer and throw the can in the trash. Tr. at 59-60.  Jackson responded by emptying the beer and throwing the can in the street. *Id.* The officer ordered him to pick up the can, and Jackson picked it up and threw it back in the street. *Id.*

8.  When Officer Vollmer ordered Jackson to stop, Jackson threw his duffle bag and another bag containing three unopened cans of beer onto the ground in an aggressive and angry manner, causing the cans of beer to explode. Tr. at 13, 60.

9.  Jackson then took an aggressive, pre-attack posture toward Officer Vollmer, clenching his fists and blading his body. Tr. at 60.

10.  Officer Vollmer, fearing an immediate battery, pushed Jackson away from him to gain some distance, and pulled out his taser as a show of force. Tr. at 60-62, 73, 75.

11.  Officer Vollmer then handcuffed Jackson and took him into custody. Tr. at 62.

## II. Value of Plaintiff's Lost Duffle Bag and Its Contents

12. The Court has already determined that Officer Vollmer improperly threw away Jackson's duffle bag instead of inventorying and tagging it as Jackson's property and having it held pending his release. *See* Doc. 2 at 18; Doc. 59. Officer Vollmer testified at trial that he threw away the bag because it was soiled with human waste and was a bio-hazard. *See* Tr. at 79. While Vollmer's testimony on this issue may be credible, the Court declines to accept this testimony because Vollmer failed to respond to the Court's April 1, 2011 Order to Show Cause (Doc. 59).

13. The bag contained 2 sets of razors, Jackson's birth certificate, his commercial driver's license applications, 5 pairs of pants, 5 T-shirts, 1 pair of shoes, a CD player with an extra set of speakers, 6 CDs, money orders in the amount of $30, and some pictures of Jackson's family and friends. Tr. at 5-6.

14. Jackson and Valdez, of the City of Albuquerque's Risk Management Division, were both willing to settle Jackson's claim for his lost bag and its contents for $400. Tr. at 23, 93, 104.

15. The Court finds Jackson's valuation of the lost photographs in the amount of $250,000 to be highly speculative considering (i) Jackson has never sold any photographs for profit in the past; and (ii) Jackson is not a professional photographer. Tr. at 10.

## III. Battery Claim Against Defendant Valdez

16. During Jackson's last visit to the City of Albuquerque Risk Management offices, Risk Adjustment Officer Valdez told Jackson that he had to release all claims against the City of Albuquerque in order to receive $400 for his lost property. Tr. at 95.

17. Jackson became angry, argumentative, and belligerent. He raised his voice, and leaned across the receptionist's desk while talking in a loud and angry manner. Tr. at 26-28, 96-

97, 99-100.

18.  The receptionist scooted back in her chair to get away from Jackson, and Valdez believed that Jackson was unpredictable and could harm her. Tr. at 97, 109.

19.  Valdez asked Jackson to leave, but Jackson ignored Valdez's requests. Tr. at 96-97.

20.  Fearing for the receptionist's safety, Valdez grabbed Jackson around the waist to restrain him. Tr. at 97, 112.

21.  Valdez asked the receptionist to call for security, and two security guards showed up and escorted Jackson out of the office. Tr. at 96, 98.

## CONCLUSIONS OF LAW

**I.   Malicious Prosecution Claim Against Defendant Vollmer**

1. Under 42 U.S.C. § 1983, federal courts look to general common law tradition, rather than tort laws of the state where the action originated, as a starting point in analyzing constitutional torts. *Heck v. Humphrey*, 512 U.S. 477, 484-86 (1994). "Although the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004). In this circuit, when addressing § 1983 malicious prosecution claims, courts look for constitutional violation of Fourth and Fourteenth Amendment. *Id.*

2. The Fourth Amendment right against unreasonable seizure governs the initial seizure and most of pretrial proceedings, and it is the pertinent standard to apply in this case. *See Wolford v. Lasater*, 78 F.3d 484, 490 (10th Cir. 1996) (stating that malicious criminal prosecution "should be governed by the Fourth Amendment rather than the more generalized substantive due process analysis under the Fourteenth Amendment").

3. To succeed in a malicious prosecution claim under § 1983, a plaintiff must prove that there

is a lack of probable cause to support the original arrest and the continued confinement, *see Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007), and the plaintiff needs to show that the defendant "knowingly and intentionally, or with reckless disregard for the truth" included false statements in the criminal complaint or omitted information which, if included, would have vitiated probable cause and violated the Fourth Amendment. *See Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990).

    4. Here, Jackson cannot establish a malicious prosecution claim because the Court finds that Officer Vollmer had probable cause to arrest and charge Jackson for the crime of assault on a peace officer and that Officer Vollmer included no false statements in the criminal complaint or omitted information which, if included, would have vitiated probable cause and violated the Fourth Amendment.

    5. Officer Vollmer had probable cause to arrest and charge Jackson for the crime of assault on a peace officer because Vollmer reasonably believed that he was in danger of receiving an immediate battery. *See* N.M.Stat.Ann. § 30-22-21 (defining "assault upon a peace officer" as "any unlawful act, threat or menacing conduct . . . which causes a peace officer to reasonably believe that he is in danger of receiving an immediate battery"). Officer Vollmer reasonably believed that he was in danger of receiving an immediate battery because Mr. Jackson, who was intoxicated, threw the beer cans on the ground in an aggressive manner and took a pre-attack stance toward Officer Vollmer while clenching his fists. *See State v. Ford*, 157 P.3d 77, 84 (N.M. Ct. App. 2007) (holding that an officer was reasonably "in fear of having his bodily integrity intruded upon" when the defendant "aggressively approached the officer with his fists clenched in an angry and threatening manner").

    6. The Court also found Officer Vollmer's testimony regarding the encounter with Mr.

Jackson credible and consistent with the original criminal complaint. There is insufficient evidence to show that Officer Vollmer "knowingly and intentionally, or with reckless disregard for the truth," included false statements in the criminal complaint or omitted information which, if included, would have vitiated probable cause.

    7. Judgment shall issue dismissing with prejudice Jackson's malicious prosecution claim.

## II.    Battery Claim Against Defendant Valdez

    8. To establish a battery claim under New Mexico law, a plaintiff must prove that the defendant acted with an intent "to cause a harmful or offensive contact with the person of the other . . . and . . . an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 827 P.2d 152, 155 (N.M. Ct. App. 1992) (citing the Restatement (Second) of Torts § 18 (1965)); *see also Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1209 n.10 (10th Cir. 2006) (invoking the same standard in applying New Mexico state law on battery).

    9. A plaintiff's battery claim fails when a defendant can prove that the battery is committed for the defense of another. *See State v. Mann*, 11 P.3d 564, 571 (N.M. Ct. App. 2000). A defendant acts in defense of another if the defendant believes that another is in immediate danger of bodily harm and the danger to the other would have caused a reasonable person in the same circumstances to act as defendant did. *Id.*

    10. Here, Jackson failed to establish the battery claim against Valdez because Jackson did not prove the contact to be harmful and offensive. More importantly, Valdez proved that the contact was made for the defense of another. Under the circumstance, Valdez reasonably believed that Jackson posed an immediate danger to the receptionist when Jackson was leaning toward the receptionist while talking in an angry and aggressive manner and the receptionist appeared to be apprehensive.

11. Jackson's conduct during the course of the trial is additional proof that Valdez acted reasonably under the circumstances and did not commit battery upon Jackson. Accordingly, judgment shall issue dismissing with prejudice Jackson's state law battery claim.

### III. The Value of Mr. Jackson's Duffle Bag and Its Contents

12. Vollmer has given no compelling reason why the Court should set aside its prior ruling that he is liable for destroying Jackson's duffle bag without due process. Thus, the Court will not set aside its prior ruling on this issue.

13. Party suing for damages has the burden of proving the damages were not mere speculation, but were estimated on a reasonable basis. *See Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir. 1996); *see also Gulf Refining Co. v. Etcheverry*, 511 P.2d 752, 753 (N.M. Ct. App. 1973).

14. Mr. Jackson provided the Court with a reasonable basis to value the lost duffle bag and its contents at $400. Additionally, this is the value that Mr. Jackson and the City of Albuquerque agreed to settle for his lost property.

15. The Court finds Mr. Jackson's valuation of his photographs to be highly speculative and without a reasonable basis. Mr. Jackson did not offer any evidence on the market value of those photographs. Nor did Mr. Jackson indicate any occasions where he had sold photographs for profit.

16. Judgment shall issue in favor of Jackson and against Vollmer in the amount of $400 representing the value of Jackson's lost bag and its contents.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE